**SO ORDERED.**

**SIGNED November 9, 2021.**



JOHN W. KOLWE
UNITED STATES BANKRUPTCY JUDGE

---

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

In re:                                              Case No. 19-10066

Hanh Thai Williams                      Chapter 7 (Involuntary)
          *Putative Debtor*
                                                      Judge John W. Kolwe

## RULING FOLLOWING TRIAL ON INVOLUNTARY PETITION

While the overwhelming majority of bankruptcies are voluntary, section 303 of the Bankruptcy Code authorizes involuntary proceedings under chapter 7 or 11 if certain conditions are met. In a case involving numerous creditors, at least three creditors must join together to file the involuntary petition, but a single creditor may file "if there are fewer than 12 such holders [of a claim against the putative debtor, i.e., creditors], *excluding* any employee or insider of such person and *any transferee of a transfer that is voidable under section 544, 545, 547, 548, 549, or 724(a) of this title . . . .*" 11 U.S.C. § 303(b)(2) (emphasis added).

In this case, a single creditor, Armand Roos, in his capacity as Dative, Testamentary Executor of the Succession of Fred Langford Houston ("Roos" or "Petitioning Creditor"), filed an involuntary petition for relief under chapter 7 on

behalf of Putative Debtor Hanh Thai Williams ("Williams" or the "Debtor"). The Debtor has more than 20 creditors, however, so this case must be dismissed under § 303(b)(2) unless the Petitioning Creditor can prove that enough of the creditors should be excluded under the statute. Roos contends that virtually all of Williams' creditors should be excluded under two of the voidability statutes referenced in § 303(b)(2): § 547, which renders voidable certain preferential transfers made within the 90-day period prior to the petition date, and § 549, which renders voidable certain unauthorized post-petition transfers.

After a rather long and contentious beginning to the case, the Court ultimately held a trial on these issues on August 23, 2021. The parties have both submitted post-trial briefs, and the Petitioning Creditor has also submitted separate Proposed Findings of Fact and Conclusions of Law.[1] Based on the Court's review of all relevant pleadings, the applicable law, the evidence admitted into the record, and the testimony given, including credibility determinations, the Court concludes that the Petitioning Creditor has carried his burden of proving that a number of creditors should be excluded under § 303(b)(2) pursuant to §§ 547 and 549, that the Debtor has failed to prove her "ordinary course" defense under § 547, and that, after excluding those creditors, the total number of creditors is fewer than 12 for purposes of § 303(b)(2). Consequently, the Court concludes that the involuntary petition was properly brought under the Bankruptcy Code, and an Order of Relief will be entered.

## Jurisdiction

This Court has jurisdiction over this matter under 28 U.S.C. § 1334. Further, the trial on an involuntary petition is a core proceeding that the Court is authorized to decide on a final basis under 28 U.S.C. § 157(b).

---

[1] Williams' post-trial brief (ECF #158) contains some factual and legal arguments that could be construed as partial proposed findings of fact and conclusions of law, but she failed to address some of the legal and factual issues relevant to the trial.

**<u>Background</u>**

The Petitioning Creditor filed the Involuntary Petition on January 16, 2019 (ECF # 1). The Debtor, represented by counsel at the time, filed a Motion to Dismiss (ECF #9) on February 7, 2019. The Motion to Dismiss argued that because the Debtor has more than 20 creditors, the Involuntary Petition filed by a single creditor should be dismissed for failure to comply with § 303(b)(2). At a March 12, 2019 hearing on the Motion to Dismiss, the Debtor voluntarily withdrew the Motion, opting instead to file an Answer to the Involuntary Petition, which she did on April 1, 2019 (ECF #22). The Court set the Involuntary Petition for trial on August 6, 2019. Following a telephone status conference on June 28, 2019, the Court entered an Order (ECF #25) resetting the trial for November 22, 2019.

1.  *Initial Cross-Motions for Summary Judgment*

On June 23, 2019, the Debtor filed a Motion for Summary Judgment (ECF # 23), setting it for a hearing on October 1, 2019. The Debtor argued that although § 303(b)(2) allows the court to exclude any creditor who is the transferee of a transfer that is voidable under § 544, 547, and 548 of the Bankruptcy Code, she has defenses to the transfers under each of those statutes. Specifically, she argued:

- With respect to § 544, which grants the bankruptcy trustee the powers of a lien creditor under state law, all of the payments were made to bona fide creditors, so none of the payments caused her to become insolvent or increase her insolvency.[2]

- With respect to § 547, which allows the trustee to avoid payments made within the 90-day preference period prior to the petition date, the Debtor argued that the payments were made in the ordinary course and so are not voidable.[3]

---

[2] *See* Debtor's Memorandum in Support of Motion for Summary Judgment, p. 19-20 (ECF #24).

[3] *Id*. at 20.

- With respect to § 548, which allows the trustee to avoid certain payments made within the longer two-year period prior to the petition date if the payment was made with "actual intent to hinder, delay, or defraud" a creditor or received less than "reasonably equivalent value" for the transfer, the Debtor argued that she did not act with the requisite intent and that she received reasonably equivalent value because it reduced her debt owed to each creditor.[4]

The Debtor argued that when her defenses to §§ 544, 547, and 548 are taken into account, most of her creditors cannot be excluded under § 303(b)(2), leaving her with 12 or more creditors. As a result, the Bankruptcy Code precludes a single creditor from filing an involuntary petition on her behalf, and this case should be dismissed.

On August 23, 2019, the Petitioning Creditor filed his own Motion for Summary Judgment (ECF #28), arguing among other things that enough creditors *can* be excluded under § 303(b) to bring the total number of creditors to fewer than 12. Not only did the Petitioning Creditor attack the Debtor's asserted defenses to voidable pre-petition transfers under § 544, 547, and 548, but he also asserted that many of the creditors can be excluded for receiving voidable *post*-petition transfers via § 549, a statute the Debtor did not address in her Motion for Summary Judgment. Under the Petitioning Creditor's interpretation, most of the Debtor's creditors should be excluded under § 303(b), bringing the total number of creditors to fewer than 12, allowing a single creditor to file the involuntary petition.

Each party filed briefs opposing the other party's motion,[5] and the Debtor filed a reply in support of her own motion.[6] The most important new information in these filings was the Debtor's response to the Petitioning Creditor's argument concerning post-petition transfers under § 549. The Debtor claims that she made the post-

---

[4] *Id*. at 20-21.

[5] *See* Petitioning Creditor' Memorandum Opposition (ECF #33) and the Debtor's Memorandum in Opposition (ECF #37).

[6] *See* Debtor's Reply (ECF #38).

4

petition payments not from estate property that existed on the petition date but rather from *unsecured* loans from her daughter, Rachael Williams, and from Henry Brown, a friend who is also an attorney, and that because the post-petition payments did not come from estate property (and because the loan proceeds are separable from the estate property), they are not voidable under § 549.[7]

At the October 1, 2019 hearing on the cross-Motions for Summary Judgment, both parties presented extensive argument and evidence in support of their respective positions, and the Court took the matters under advisement.[8] On November 13, 2019, the Court entered its ruling on the record.[9] Based on its interpretation of the law at the time, including *In re Blaine Richards Co., Inc.*, 10 B.R. 424 (Bankr. E.D.N.Y. 1981), the Court believed that a petitioning creditor could demonstrate that a creditor should be excluded under § 303(b)(2) by proving a prima facie case of voidability under any of the statutes listed in § 303(b)(2), without regard to affirmative defenses, which could require extensive proceedings to adjudicate.[10] Because the Court concluded that the Petitioning Creditor had carried its burden of showing a prima facie case of voidability for pre-petition transfers under § 547 for 15 creditors, bringing the total number of creditors to fewer than 12, it entered summary judgment for the Petitioning Creditor on the ground of voidability under § 547 only, and held that this case could proceed.[11]

### 2. District Court Appeal

The Debtor filed a Motion to Reconsider, and shortly thereafter her attorney withdrew. The Debtor has remained pro se since. Following the denial of the Motion to Reconsider, the Debtor appealed to the District Court, arguing that the Court did not properly consider her "ordinary course" defense under § 547. The District Court

---

[7] *Id.* at 9-13.

[8] *See* Transcript of October 1, 2019 Hearing (ECF #71).

[9] *See* Transcript of November 13, 2019 Hearing (ECF #72).

[10] *Id.* at 5.

[11] *Id.*

5

agreed, reasoning that the *Blaine Richards Co.* court failed to take the language of § 547 into account.[12] Specifically, because § 547(b) provides that a preferential transfer is avoidable except as provided in subsections (c) and (i), and § 547(c) provides for the ordinary course defense, the District Court held that a bankruptcy court must determine whether the defense applies as a threshold question under § 303(b)(2), rather than allowing a petitioning creditor to prove a prima facie case of voidability.

Because this Court did not reach the question of the "ordinary course" defense under § 547, the District Court vacated and remanded the summary judgment of this Court. The District Court noted that "[i]t may well be that Williams' summary judgment submissions do not create a genuine question of material fact as to the ordinary course defense for all 15 creditors that received preferential transfers. If not, Roos may still be entitled to summary judgment."[13] Furthermore, the District Court noted that this Court had based its decision entirely on voidability under § 547 and did not address voidability under § 547, 548, or 549, so the District Court likewise declined to address those arguments.[14]

### 3.    *Remand and Pre-Trial Matters*

Shortly after the District Court remanded, this Court set a status conference, at which it once again set the Involuntary Petition for trial on July 15, 2021, which was eventually reset to August 23, 2021. Prior to trial, both parties filed new cross-Motions for Summary Judgment, which the Court denied without prejudice at a June 8, 2021 hearing (ECF #145), opting instead to proceed to trial on the merits.

On the morning of trial, for the first time, Henry Brown requested to be the Debtor's trial attorney. Mr. Brown was not only listed by both parties as a trial witness but is also a listed creditor of the Debtor and the attorney of record for two individuals in associated adversary proceedings. Although Mr. Brown has participated in multiple status conferences in the adversary proceedings and

---

[12] *See* District Court's January 22, 2021 Memorandum Opinion (ECF #121).

[13] *Id*. at 7.

[14] *Id*. at 4 and n.4.

6

appeared in at least one matter in the main bankruptcy case on his own behalf as an interested party, at no point prior to the morning of trial did he either file a request to be the Debtor's counsel, hold himself out to be her counsel, or otherwise indicate that he intended to request to represent her. Furthermore, since the Debtor's counsel of record terminated his representation in December 2019, she has represented at all times that she is acting pro se, and she has filed all documents on her own behalf as a pro se litigant.

The Court denied the request for the above reasons, and despite the Debtor's assertion in her post-trial brief that this Court denied her access to effective counsel, the Court stands by its decision. Not only was the oral request made for the first time on the morning of trial, immediately before it was set to begin, but Mr. Brown's particular relationship to this case and the Debtor, as both a trial witness and creditor of the Debtor, would make it difficult, if not impossible, to provide effective representation. *Cf.* Louisiana Rule of Professional Conduct 3.7(a), which provides:

> (a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:
>
> > (1) the testimony relates to an uncontested issue;
> >
> > (2) the testimony relates to the nature and value of legal services rendered in the case; or
> >
> > (3) disqualification of the lawyer would work substantial hardship on the client.

*Id.*

Mr. Brown was named as a potential witness by both parties and was in fact called as a witness *by the Debtor* to testify about, among other things, certain disputed loans he made to the Debtor pre- and post-petition through her daughter, so his testimony did not relate to an uncontested issue. Nor did it relate to any legal services he had provided. Finally, the Debtor represented herself capably for nearly two years between the withdrawal of her counsel of record and the August 2021 trial, and she won her appeal. Thus, refusing to allow Mr. Brown to commence his representation of the Debtor at the trial did not work a substantial hardship on the Debtor.

7

*4.     Testimony and Evidence*

Following this decision, the trial proceeded as planned, which, in contrast to the 2019 hearing on the earlier cross-Motions for Summary Judgment, focused on both pre-petition preference payments under § 547 and on post-petition payments under § 549 rather than on voidability under § 544 or 548. The first witness called by counsel for the Petitioning Creditor was the Petitioning Creditor himself, Armand L. Roos, who testified as to the Debtor's debt to him, establishing not only its nature (that it resulted from a jury verdict finding the Debtor had breached certain fiduciary duties) but that it was bona fide, not disputed, and not contingent. Mr. Roos also testified as to pre-bankruptcy collection efforts and his good faith.[15] The Debtor's cross-examination largely focused on issues not pertinent to either the validity of the debt or issues relevant to the trial.

The Petitioning Creditor next called the Debtor herself, spending a substantial amount of time questioning her about the list of 27 creditors she had prepared and signed on February 7, 2019, which was introduced into evidence as Cr. Ex. 6 (ECF #150-8) (hereinafter "List of Creditors"). The evidence and testimony established which creditors received potentially voidable pre- or post-petition payments, as

---

[15] In their briefing, both parties also addressed the issue of whether the Petitioning Creditor acted in good faith in filing this Involuntary Petition. The Court notes that § 303 sets out specific standards a petitioning creditor must meet, and good faith is not among them at the threshold stage. The Court agrees with the Bankruptcy Court for the Eastern District of Louisiana, which recently held: "In the absence of direct instruction from the Fifth Circuit, this Court agrees with other courts in this Circuit and finds that, given this Court's finding that the Petitioning Creditors have carried their burden under §§ 303(b) and (h) for filing the involuntary petition against [the putative debtor], consideration and a finding of bad faith would be inappropriate. As explained by the court in *In re On-Site Fuel Services* [No. 18-04196, 2019 WL 2252003, at *9 (Bankr. S.D. Miss. May 24, 2019)], an argument that a bankruptcy court should dismiss an involuntary petition for bad faith even when the petitioning creditors satisfy § 303's requirements 'is without merit because this Court lacks the authority to arbitrarily impose non-statutory requirements to the procedure for filing involuntary petitions as set forth in the Code.'" *In re Seven Three Distilling Co., L.L.C.*, No. 21-10219, 2021 WL 3814802, at *6 (Bankr. E.D. La. Aug. 4, 2021) (most citations omitted). The Eastern District, like the *On-Site Fuel Services* court, ultimately relied on *Law v. Siegel*, 571 U.S. 415, 427 (2014), which generally prohibits a bankruptcy court from imposing additional requirements beyond those set out in the Bankruptcy Code. Nevertheless, to the extent good faith is at all relevant, the Court finds no evidence that the Petitioning Creditor acted in bad faith in filing the Involuntary Petition, given his strict compliance with § 303, and the ample evidence of the Debtor's behavior prior to the petition date which would justify filing the Involuntary Petition in good faith.

discussed in the Court's analysis below. The Debtor specifically acknowledged making certain pre- and post-petition payments to a number of those creditors. The following table represents a brief summary of the Debtor's testimony with respect to each creditor shown on her List of Creditors:

| | Creditor | |
|---|---|---|
| 1. | **Armand L. Roos, Dative and Independent Executor in Succession of Houston** | This is the Petitioning Creditor; the Debtor made no pre- or post-petition transfers to the Petitioning Creditor. |
| 2. | **Capital One** | The Debtor admitted that Capital One also issued the Neiman Marcus card and that Capital One and Neiman Marcus are the same creditor,[16] though she initially listed them as separate creditors. Furthermore, the Debtor admitted to making a pre-petition payment to Capital One during the 90-day preference period. |
| 3. | **American Express** | The Debtor admitted to making pre-and post-petition transfers to American Express.[17] |
| 4. | **Citi Card** | The Debtor admitted to making post-petition transfers to Citi Card.[18] |
| 5. | **Conn's Home Plus** | The Debtor admitted to making pre-and post-petition transfers to Conn's Home Plus.[19] |
| 6. | **Conn's Credit** | The Debtor admitted that three of the nominal creditors (Conn's Credit, Sam's Club, and Lowe's), are actually all store credit accounts held by a single creditor, **Synchrony Bank**,[20] so these three nominal creditors really represent a single one. Furthermore, the Debtor admitted to making pre- |

---

[16] *See* Trial Transcript at 88 (ECF #157).

[17] *See* Trial Transcript at 90 ll. 21-25, 91 ll. 1-19 (ECF #157).

[18] *See* Trial Transcript at 94 ll. 8-12 (ECF #157). The evidence also appears to show at least one pre-petition preference payment to Citi Card as well, which may also be avoidable under § 547. *See* Debtor's Bank Records, Cr. Ex. 5 at 44, showing a December 11, 2019 payment (ECF #150-7).

[19] *See* Trial Transcript at 99 l. 25, 100, and 101 ll. 1-2 (ECF #157).

[20] *See* Trial Transcript at 96 ll. 22-25 & 97 ll. 1-9 (ECF #157).

9

| | Creditor | |
|---|---|---|
| | | and post-petition transfers to Synchrony Bank under one or other store accounts.[21] |
| 7. | **First Premier** | The Debtor admitted to making pre-and post-petition transfers to First Premier.[22] |
| 8. | **Blaze** | The true name of the creditor is FSB Blaze. The Debtor admitted to making both pre- and post-petition transfers to FSB Blaze.[23] |
| 9. | **Merrick** | The Debtor admitted to making both pre- and post-petition transfers to Merrick.[24] |
| 10. | **Discover Card** | The Debtor admitted to making post-petition transfers to Discover.[25] |
| 11. | **Net Credit** | The Debtor admitted to making both pre- and post-petition transfers to Net Credit.[26] |
| 12. | **Neiman Marcus** | This "creditor" is actually part of a single claim held by Capital One. |
| 13. | **Victoria's Secret** | The actual creditor is Comenity Bank, which issued the Victoria's Secret card, and the Debtor admitted to making both pre- and post-petition transfers to Comenity.[27] |
| 14. | **Sam's Club** | The Debtor testified that this "creditor" is actually part of a single claim held by Synchrony Bank. |
| 15. | **Indigo** | The true name of the creditor is Genesis FS Card d/b/a Indigo. The Debtor admitted to making both pre- and post-petition transfers to the creditor.[28] |
| 16. | **JPL Financial Services[29]** | The Debtor admitted to making post-petition transfers to JPL Financial Services.[30] |

---

[21] *See* Trial Transcript at 144 ll. 8-25 & 145 l. 1 (ECF #157).

[22] *See* Trial Transcript at 99 l. 25, 100, and 101 ll. 1-2 (ECF #157).

[23] *See* Trial Transcript at 101 ll. 14-25 & 102 ll. 1-7 (ECF #157).

[24] *See* Trial Transcript at 103 ll. 3-18 (ECF #157).

[25] *See* Trial Transcript at 106 ll. 3-12 (ECF #157).

[26] *See* Trial Transcript at 106 pp. 22-25, 107 ll. 1-7, 108 ll. 151-25, and 109 ll. 1-3 (ECF #157).

[27] *See* Trial Transcript at 108 ll. 7-14 (ECF #157).

[28] *See* Trial Transcript at 111 ll. 9-25 and 112 ll. 1-12 (ECF #157).

[29] This creditor was listed as "J.P. Financial Services" in the Debtor's list. *See* Cr. Ex. 6 (ECF #1508-8).

[30] *See* Trial Transcript at 112 ll. 23-25 & 113 ll. 1-12 (ECF #157).

| | Creditor | |
|---|---|---|
| 17. | **DHCC, LLC** | The Debtor admitted to making post-petition transfers to DHCC, LLC.[31] |
| 18. | **Phyllis Liberto** | The Debtor admitted to making post-petition transfers to Ms. Liberto.[32] |
| 19. | **Ken Donnelly** | The Debtor admitted to making post-petition transfers to Mr. Donnelly.[33] |
| 20. | **Louisiana Neurologic Specialties[34]** | The Debtor admitted to making post-petition transfers to Louisiana Neurologic Specialties.[35] |
| 21. | **Lowe's** | The Debtor testified that this "creditor" is actually part of a single claim held by Synchrony Bank. |
| 22. | **Family Practice Associates** | The Debtor admitted to making post-petition transfers to Family Practice Associates.[36] |
| 23. | **Christus Health System** | The Debtor admitted at trial that this creditor should be excluded because it was a contingent debt, which she would only owe if her health insurer failed to pay.[37] |
| 24. | **AT&T** | The Debtor admitted to making post-petition transfers to AT&T.[38] |
| 25. | **Le Fleur Classique[39]** | The true name of the creditor is Barbara Essary-Yost d/b/a Le Fleur Classique. The Debtor admitted to making post-petition transfers to this creditor.[40] |
| 26. | **Henry Brown** | The Debtor has always acknowledged that Mr. Brown is an insider. |

---

[31] *See* Trial Transcript at 113 ll. 21-25 & 114 ll. 1-15 (ECF #157).

[32] *See* Trial Transcript at 114 ll. 24-25 & 115 ll. 1-18 (ECF #157).

[33] *See* Trial Transcript at 116 ll. 2-25 & 117 ll. 1-7 (ECF #157).

[34] This creditor was listed as "La. Neurological Specialties, Inc." in the Debtor's list. *See* Cr. Ex. 6 (ECF #1508-8).

[35] *See* Trial Transcript at 117 ll. 16-25 & 118 ll. 1-15 (ECF #157).

[36] *See* Trial Transcript at 118 ll. 24-25 & 119 ll. 1-8 (ECF #157).

[37] *See* Trial Transcript at 76 ll. 10-13 (ECF #157).

[38] *See* Trial Transcript at 120 & 121 ll. 1-5 (ECF #157).

[39] This creditor was listed as "Le Flour Classique" in the Debtor's list. *See* Cr. Ex. 6 (ECF #1508-8).

[40] *See* Trial Transcript at 121 ll. 15-25 & 122 ll. 1-9 (ECF #157).

| | Creditor | |
|-----|----------|---|
| 27. | **Rachael Williams** | The Debtor has always acknowledged that her daughter, Rachael Williams, is an insider. |

With respect to her § 547 defense that the pre-petition payments made within the 90-day preference period were made in the "ordinary course," the Debtor presented no evidence other than her own testimony that the creditors in question "are ordinary people, ordinary businesses. I paid the bill generally. And they are – they should be counted, and that's it."[41] As best as the Court can tell, the Debtor's "ordinary course" argument rests on her contention that because she was making minimum payments, or near minimum payments, to these creditors, the payments were ipso facto made in the ordinary course. The Debtor offered no evidence or testimony as to whether the debts on her List were incurred in the "ordinary course."[42]

The Debtor was also questioned about loan documents and associated security agreements governing those loans (Cr. Exs. 29 and 30, ECF #151-15 and 151-16). One security agreement, executed on January 1, 2017 (less than one month after the jury rendered its verdict in favor of Roos and against the Debtor), is in favor of Mr. Brown and against the Debtor. It governs not only an August 12, 2010 loan to the Debtor in the amount of $34,000 and a December 28, 2016 loan in the amount of $20,000, but also "[a]ny and all present or future advances, loans, extensions of credit and/or other financial accommodations" to the Debtor up to $1 million.[43] It is secured by a very broad description of the collateral, including "[a]ll accounts receivable, deposit accounts, cash, wages, furniture, fixtures," and a host of other assets, including "all

---

[41] *See* Trial Transcript at 22 ll. 7-9 (ECF #157).

[42] She did testify, however, that she actually took out a $1,000 signature loan to keep making credit card payments on the advice of her attorney at the time, in an apparent attempt to keep up the appearance that the payments were being made in the ordinary course. *See* Trial Transcript at 107 (ECF #157). As discussed further below, the Court sees nothing ordinary about taking on new debt only to maintain existing and recently incurred debt.

[43] *See* Cr. Ex. 29 at 6 (ECF #151-15)

12

membership interest in Platinum Interest, LLC (a Louisiana limited liability company)."[44] The membership interest in Platinum Interest, LLC (or Platinum Interests, LLC; both spellings appear in the record) is significant because the Debtor has valued it in her bankruptcy schedules at $266,067.00,[45] meaning that collateral alone would fully secure all pre- and post-petition loans, leaving the Debtor and thus the estate with substantial equity in the property. Mr. Brown also recorded a UCC-1 Financing Statement.[46]

A similar security agreement and UCC-1 financing statement against the Debtor and in favor of her daughter, Rachael Williams, were also executed and recorded in 2018.[47] These agreements between the Debtor and Rachael Williams suggest that Rachael was loaning money to the Debtor herself, but testimony by the Debtor and Mr. Brown revealed that Mr. Brown was actually the source of all of the funds. For the post-petition loans, Mr. Brown would not directly pay the Debtor; instead, he would transfer the funds to Rachael Williams, a schoolteacher, and Rachael Williams would then transfer the funds to the Debtor.

When questioned as to why the parties made this two-step arrangement when all of the funds were intended for the Debtor, Mr. Brown failed to offer any explanation, saying "She [the Debtor] was getting money from [Rachael], that's correct, and I loaned the money through [Rachael] to her. That is correct. Now, why we did it that way, I really can't explain that."[48] He did not take credit for the idea, simply saying that "It was okay with me. I would say I said to do it that way. I said that's a good way to do it, and it was done."[49]

In short, the trial testimony established that Mr. Brown and, at least on paper, Rachael Williams, had effective security agreements in place prior to the petition date

---

[44] *Id.*

[45] *See* Schedule A/B at 5 (ECF #60).

[46] *See* Cr. Ex. 31 at 2 (ECF #151-17).

[47] *See* Cr. Ex. 30 (ECF #151-16 and 151-17 at 3).

[48] *See* Trial Transcript at 165 ll. 22-25.

[49] *Id.* at 166 ll. 12-17.

that covered any loans from either of them in a total amount up to $1 million, not only for funds already loaned to the Debtor when the agreements were executed in 2017 and 2018, respectively, but for future funds to be loaned, which covered the post-petition loans from which the Debtor may have made some post-petition payments to creditors. Neither the Debtor nor Mr. Brown provided any real explanation for this two-step loan arrangement, and it appears to the Court to have served no purpose other than to thinly obfuscate the Debtor's finances and the source of payments to her.

At any rate, the trial evidence shows that each post-petition loan was subject to the pre-petition security agreements by their plain terms, and contrary to the Debtor's assertions at the summary judgment phase, no evidence was introduced at trial suggesting that the security agreements had been released or canceled or that the post-petition loans were released or otherwise exempted from those security agreements. Nor was there any evidence showing the loans exceeded the value of the collateral. Indeed, the Debtor's bankruptcy schedules value her 90% membership interest in Platinum Interests, LLC at $266,067.00.[50] That membership interest was pledged as collateral under the security agreement(s), and its value alone exceeded the value of all of her pre- and post-petition loans from Mr. Brown. Thus, each post-petition loan reduced the value of estate property under the security agreement(s). As a result, the post-petition loan proceeds are property of the estate.

## Findings of Fact and Conclusions of Law

Involuntary bankruptcy proceedings are authorized and governed by § 303 of the Bankruptcy Code. Ordinarily, it takes at least three creditors, acting in concert, to commence an involuntary bankruptcy proceeding. *See* 11 U.S.C. § 303(b)(1). But § 303(b) allows a single creditor to commence an involuntary bankruptcy proceeding against a person provided certain requirements are met. First, the entity commencing the action must be "a holder of a claim against such person that is not contingent as

---

[50] *See* Schedule A/B at 5 (ECF #60).

to liability or the subject of bona fide dispute as to liability or amount" and such noncontingent, undisputed claims" must "aggregate at least $16,750." 11 U.S.C. § 303(b)(1). Second there must be "fewer than 12 . . . holders" of noncontingent, undisputed claims against such person, "excluding any employee or insider of such person and any transferee of a transfer that is voidable under section 544, 545, 547, 548, 549, or 724(a)" of the Bankruptcy Code. 11 U.S.C. § 303(b)(2). Third and finally, in cases where an involuntary petition has been "timely controverted," it must be shown "the debtor is generally not paying such debtor's debts as such debts become due." 11 U.S.C. § 303(h)(1). If all of these requirements are met, the court "shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed." *Id.*

1.  *The Petitioning Creditor holds a noncontingent, undisputed claim exceeding $16,750.*

Mr. Roos testified as to the amounts owed to him by the Debtor, establishing not only its nature but that it is noncontingent and undisputed. The Petitioning Creditor's claim is the result of a December 15, 2016 jury verdict in his favor in excess of $1.5 million (for the Debtor's breach of fiduciary duties) that was affirmed by the Louisiana Court of Appeal for the Second Circuit prior to this involuntary proceeding being filed.[51] After the involuntary petition was filed, the Louisiana Court of Appeal for the Third Circuit denied an application for rehearing,[52] and both the Louisiana Supreme Court and the United States Supreme Court declined review of the lower court judgements.[53] Given the finality of the verdict and judgment against Williams, the Court finds that the Petitioning Creditor holds a claim against Williams that

---

[51] *See Succession of Houston*, 52,181 (La. App. 2 Cir. 8/15/18), 253 So. 3d 836 (affirming trial court verdict).

[52] *See Succession of Houston*, 18-00807 (La. App. 3 Cir. 2/20/19) (denying application for rehearing). The Second Circuit transferred the case to the Third Circuit after the Second Circuit issued its opinion affirming the trial court for reasons beyond the scope of this ruling.

[53] *See Succession of Houston*, 2019-0458 (La. 5/20/19), 271 So. 3d 1274 (denying writ); *Williams v. Succession of Houston*, 140 S. Ct. 387, 205 L. Ed. 2d 218 (2019) (denying certiorari).

exceeds $16,750 and "that is not contingent as to liability or the subject of bona fide dispute as to liability or amount."  11 U.S.C. § 303(b)(1).

The Debtor contends that the Petitioning Creditor's judgment was still on appeal when the involuntary petition was filed. While true, it does not change the Court's view concerning the Petitioning Creditor's claim. The Debtor's applications for rehearing, and for review with the Louisiana and United States Supreme Courts, were "devolutive appeals" under Louisiana law because they did not suspend or stay the effect or the execution of the judgment. *See* La. Code Civ. Proc. art. 2087. A claim arising from an unstayed state court judgment is not subject to bona fide dispute as to liability or amount. *In re Henry S. Miller Commercial, LLC*, 418 B.R. 912, 921-22 (Bankr. N.D. Tex. 2009); *In re Drexler Assocs., Inc.* 57 B.R. 312, 314 (Bankr. S.D.N.Y. 1986) ("[A] judgment which has not been stayed constitutes a claim which is neither contingent nor the subject of a bona fide dispute.").

Accordingly, the Court finds that the Petitioning Creditor has satisfied the requirements of § 303(b)(1) by holding a noncontingent, undisputed claim exceeding $16,750.

2.    *After accounting for voidable transfers made by the Debtor under §§ 547 and 549, the Debtor has fewer than 12 creditors.*

The primary focus of trial was on whether any of the Debtor's creditors should be excluded from the creditor count because they received a voidable transfer under § 547 or § 549. Before examining those questions, the Court will identify those creditors that the Debtor admits should be excluded from the list. First, the Debtor has always acknowledged that Henry Brown and Rachel Williams should be excluded because they are insiders. Second, the Debtor admits that Christus Health System should be excluded because it was a contingent debt, which she would only owe if her health insurer failed to pay.[54]

---

[54] *See* Trial Transcript at 76 ll. 10-13 (ECF #157). The record shows that this debt was indeed paid by Debtor's insurance carrier.

16

Third, two of the Debtor's creditors, Capital One and Synchrony Bank, were counted multiple times in her List. The Debtor admitted that Capital One also issued the Neiman Marcus card and that Capital One and Neiman Marcus are the same creditor,[55] though she initially listed them as separate creditors. Thus, the Court will disregard the nominal "Neiman Marcus" creditor as duplicative. Similarly, the Debtor admitted that three of the nominal creditors (Conn's Credit, Sam's Club, and Lowe's), are actually all store credit accounts held by a single creditor, Synchrony Bank,[56] so these three nominal creditors really represent a single creditor. For simplicity, the Court will exclude the Sam's Club and Lowe's "creditors" as duplicative.

After giving effect to these admissions by the Debtor, the creditor count is down to 21. The Court will now turn to whether any of the creditors should be excluded from the creditor count for receiving voidable transfers under §§ 547 and 549.

### a. The Debtor made transfers that are voidable under § 547.

The record evidence and the Debtor's testimony, detailed above, establish that the Debtor made pre-petition transfers to at least 10 of the creditors on the List of Creditors during the 90-day period before the petition date: Capital One; American Express; Conn's Credit; Synchrony Bank (nominal creditors Conn's Credit, Sam's Club, and Lowe's); First Premier; Blaze; Merrick; Net Credit; Victoria's Secret; and Indigo. The Petitioning Creditor contends that these 10 entities should be excluded from the creditor count because the pre-petition transfers are voidable as preferential transfers under § 547 of the Code. The Debtor disagrees, claiming that the transfers are not voidable under § 547(c) because they were made in the "ordinary course."

Section 547(b) establishes the elements that must be proven to avoid a preferential transfer:

---

[55] *See* Trial Transcript at 88 (ECF #157).

[56] *See* Trial Transcript at 96 ll. 22-25 & 97 ll. 1-9 (ECF #157).

**(b)** Except as provided in subsections (c) and (i) of this section, the trustee may avoid any transfer of an interest of the debtor in property--

**(1)** to or for the benefit of a creditor;

**(2)** for or on account of an antecedent debt owed by the debtor before such transfer was made;

**(3)** made while the debtor was insolvent;

**(4)** made--

**(A)** on or within 90 days before the date of the filing of the petition; or

**(B)** between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

**(5)** that enables such creditor to receive more than such creditor would receive if--

**(A)** the case were a case under chapter 7 of this title;

**(B)** the transfer had not been made; and

**(C)** such creditor received payment of such debt to the extent provided by the provisions of this title.

*Id*. In the normal case, the trustee "has the burden of persuasion at trial with respect to each of the elements of a preference claim under 11 U.S.C. § 547(b)." *In re Cent. Louisiana Grain Co-op., Inc.*, 497 B.R. 229, 234 (Bankr. W.D. La. 2013) (discussing the trustee's burden in an ordinary case). But for purposes of § 303(b)(2), the Petitioning Creditor has this burden. Like the trustee, the Petitioning Creditor can also rely upon the insolvency presumption in § 547(f): "For the purposes of this section, the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition." 11 U.S.C. § 547(f).

18

The undisputed evidence shows that each element was met here, as all of the pre-petition payments at issue were made to or for the benefit of a creditor to pay down antecedent debt, and within the 90-day pre-petition period in which the Debtor was presumed to be insolvent. Thus, as the Court already concluded in its decision on the Petitioning Creditor's earlier Motion for Summary Judgment, he has carried his burden of proving that the pre-petition payments made in the 90 days period to the petition date are, on their face, avoidable preference payments under § 547(b).

As noted, the District Court remanded because this Court declined to consider, at the summary judgment stage, the Debtor's "ordinary course" defense under § 547(c) for purposes of § 303(b)(2). Under the District Court's instructions on remand, the Court potentially could have addressed the defense on summary judgment, but the Court decided to proceed to trial, allowing the Debtor to submit any permissible evidence in support of her defense.

Section 547(c)(2) sets forth the ordinary course defense. It provides that an otherwise avoidable transfer is not subject to avoidance:

> **(2)** to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee, and such transfer was--
>
> > **(A)** made in the ordinary course of business or financial affairs of the debtor and the transferee; or
> >
> > **(B)** made according to ordinary business terms;

*Id.*

In the ordinary case, the creditor alleged to have received the preferential transfer would have the burden of proving the affirmative defense of ordinary course. *In re Cent. Louisiana Grain Co-op., Inc.*, 497 B.R. 229, 235 (Bankr. W.D. La. 2013) (citing *In re Gulf City Seafoods*, 296 F.3d 363, 368 n.5 (5th Cir. 2002)). For purposes of § 303(b)(2), the Debtor has that burden. Specifically, the Debtor must prove both that the payments were made in the ordinary course either under what is known as the subjective prong, i.e., whether the transfers were made in the ordinary course of

19

both parties or, if the Debtor cannot prove that, under what is known as the objective prong, i.e., whether the transfers were made according to ordinary business terms as reflected in the relevant industry. *In re SGSM Acquisition Co. LLC*, 439 F.3d 233, 239 (5th Cir. 2006).

This Court has summarized the requirements for establishing the subjective prong:

> The subjective prong of the ordinary course defense requires a fact-specific examination of the parties' conduct to determine "whether the transactions between the debtor and the creditor before and during the ninety-day period are consistent." *Lightfoot v. Amelia Maritime Services, Inc. (In re Sea Bridge Marine, Inc.),* 412 B.R. 868, 872 (Bankr. E.D. La. 2008). The factors that courts consider include (1) the time period over which the parties engaged in similar transactions, (2) whether the amount or form of payment differ from past practices, (3) the presence of any unusual collection activity, and (4) whether the creditor took actions that gained it an advantage over other creditors in light of the debtor's deteriorating financial condition. *See Kleven v. Household Bank F.S.B.,* 334 F.3d 638, 642 (7th Cir. 2003); *In re Quad Systems Corp.,* 2003 WL 25947345, at *5 (Bankr. E.D. Pa. 2003). A creditor typically addresses these factors by establishing a "baseline of dealing" as far as the parties' past billing, payment, and collection practices. *In re Accessair, Inc.,* 314 B.R. 386, 393 (8th Cir. BAP 2004) (creditor had "the burden of establishing some baseline of dealings between the parties prior to the preference period"). A creditor must establish that the challenged transfer occurring during the preference period falls within the normal pattern of payment practices between the parties during the pre-preference period. *Id.*

*Cent. Louisiana Grain Co-op., Inc.*, 497 B.R. at 236.

As noted, it is the Debtor's burden in this case to prove the subjective prong, including establishing the "baseline of dealing" with respect to her history of payments to each creditor. She failed to present any evidence whatsoever on her history of transactions with each creditor prior to 90 days before the petition date and failed to establish any pattern of normal payment. Indeed, the evidence showed that

20

she had incurred most of the debts to creditors to which she made preference payments only after incurring the overwhelming debt to the Petitioning Creditor.

She also admitted at trial to taking out a $1,000 signature loan "to pay some of the credit cards, and I was told [by her attorney at the time] I need to keep paying my debts as ordinary course of business."[57] Thus, not only did the Debtor fail to present sufficient evidence to prove that the debts were in the ordinary course under the legal standard set out above, but she admitted to taking on new debt to keep up the appearance of making routine payments on the advice of counsel, which does not suggest they were being made in the ordinary course at all. To the contrary, the Debtor's apparent scheme to placate her low-value creditors using unsustainable financing while ignoring by far her largest creditor suggests that the payments were made in anything but the ordinary course. Accordingly, the Court finds that the Debtor failed to carry her burden of proving the subjective prong of the "ordinary course" defense.

If a creditor cannot meet the subjective prong under § 547(c)(2), it may still prevail if it can prove the objective prong, which requires the creditor to show that the challenged transfers were consistent with the relevant industry standard. In order to satisfy this prong, courts require creditors to offer evidence of payment practices between other creditors and debtors in the relevant industry. *Gulf Seafood Inc.*, 296 F. 3d at 369 ("In our view, for an industry standard to be useful as a rough benchmark, the creditor should provide evidence of credit arrangements of other debtors and creditors in a similar market, preferably both geographic and product."). The standard cannot be satisfied by proof of the creditor's own dealings with the debtor or other parties, but "requires references to some external data" involving other creditors and debtors in the relevant industry. *In re Merry-go-round Enterprises, Inc.* 272 B.R 140, 147 (Bankr. D. Md. 1996) (creditor did not sustain its burden of proof at trial because it did not produce evidence of industry practice or custom apart from the creditor's own experience).

---

[57] *See* Trial Transcript at 107 (ECF #157).

The Debtor offered no such evidence at trial, relying entirely on her subjective and factually unsupported assertion that the payments were made in the ordinary course.

Thus, the Court must conclude that the Debtor has failed to carry her burden of proving, under either the subjective or objective prong, that the preference payments were made in the "ordinary course." Accordingly, those creditors that received a payment from the Debtor within the 90-day period prior to the petition date, namely Capital One, American Express, Conn's Home Plus, Conn's Credit, First Premier, Blaze, Merrick, Net Credit, Victoria's Secret, and Indigo, will be excluded for purposes of determining the number of creditors under § 303(b)(2).

### b.  The Debtor made transfers that are voidable under § 549.

The Petitioning Creditor also seeks to exclude creditors to which the Debtor made post-petition payments under § 549, which reads, in relevant part:

> **(a)** Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate—
>
> **(1)** that occurs after the commencement of the case; and
>
> **(2)**
>
>> **(A)** that is authorized only under section 303(f) or 542(c) of this title; or
>>
>> **(B)** that is not authorized under this title or by the court.
>
> **(b)** In an involuntary case, the trustee may not avoid under subsection (a) of this section a transfer made after the commencement of such case but before the order for relief to the extent any value, including services, but not including satisfaction or securing of a debt that arose before the commencement of the case, is given after the commencement of the case in exchange for such transfer, notwithstanding any notice or knowledge of the case that the transferee has.
>
> * * *

22

>**(d)** An action or proceeding under this section may not be commenced after the earlier of—

>>**(1)** two years after the date of the transfer sought to be avoided; or

>>**(2)** the time the case is closed or dismissed.

*Id.*

None of the post-petition payments at issue were authorized under § 303(f), § 542(c), or court order, and the Debtor presented no evidence that the payments at issue were for new value given. Rather, all of the payments at issue appear to have been made to satisfy debts that arose before the commencement of the case. Thus, the Petitioning Creditor has shown that all of the post-petition payments at issue are, on their face, subject to avoidance under § 549.

Federal Rule of Bankruptcy Procedure 6001 provides: "Any entity asserting the validity of a transfer under § 549 of the Code shall have the burden of proof."[58] Here, that is the Debtor. Her only argument is that the post-petition payments cannot be avoided because she did not pay them from estate property but rather from loans she received from Mr. Brown (through her daughter, Rachael Williams). She argues that the loan proceeds are not property of the estate because, under this Chapter 7 case, the property of the estate was fixed as of the petition date, and she alleged that the post-petition loans were unsecured, so they could not affect property of the estate.

Her argument essentially relies on the definition of property of the estate under § 541 of the Bankruptcy Code, which broadly defines property of the estate but excludes certain post-petition income. However, § 541(a)(6) includes in property of the estate "[p]roceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case." The Debtor's post-petition loans from Mr.

---

[58] *See also, e.g., In re Mullican*, 417 B.R. 389, 405 (Bankr. E.D. Tex. 2008), *aff'd*, 417 B.R. 408 (E.D. Tex. 2009) ("The Chapter 7 trustee established such a transfer in this case with respect to the withdrawal of $20,000 from the Inherited IRA on July 3, 2007, and the Debtors failed to carry their burden to establish the validity of the withdrawal. See FED. R. BANKR.P. 6001 . . . .").

Brown were not "earnings from services performed"; they were loans. A post-petition loan secured by property of the estate is an avoidable transfer under § 549. *See In re Belmonte*, 551 B.R. 723, 732 (Bankr. E.D.N.Y. 2016) (avoiding a $250,000 post-petition loan "which was secured by a mortgage against [the Debtor's] home and which was clearly property of Debtor's estate]").

If the post-petition loans were unsecured, as the Debtor argues, her argument might have some weight, as it would not affect estate property. However, as the Court already found above, all of the post-petition loans were subject to the 2017 security agreement in favor of Mr. Brown (and, at least on paper, to the 2018 security agreement in favor of her daughter, Rachael Williams), which governed not only past loans but also future loans. The security agreements broadly defined the collateral to include assets, including bank accounts, that would otherwise be property of the estate. As noted, no evidence was ever submitted showing that the post-petition loans were exempted from the security agreements, so the Court concludes that the post-petition loans had the effect, under the security agreements, of encumbering property of the estate that was unencumbered as of the petition date. Thus, the loan proceeds were in effect property of the estate used to pay pre-petition debts, thus making those payments voidable under § 549 of the Code.

The Debtor also failed to address other evidence that shows that the Debtor used estate property to pay the pre-petition creditors. As the Petitioning Creditor also points out, even if the loan funds were unsecured, they would be presumed to be property of the estate because the Debtor undeniably commingled these funds with estate funds in her checking accounts (including income from pre-petition work that was received post-petition), and the Debtor has failed to prove that estate funds were not used to make the post-petition payments.[59] The Petitioning Creditor also contends that at least 10 of the post-petition payments were made before the Debtor would have commingled the loan proceeds with estate funds. While the Court finds merit to

---

[59] *See In re Smith*, 415 B.R. 222, 235 (Bankr. N.D. Tex. 2009) ("To the extent that Mr. Smith [the debtor] argues that the funds paid from the Wells Fargo Account were Ms. Smith's separate property, and not property of the estate, he has not met his burden.").

24

these arguments as well, as the Debtor presented no evidence clearly distinguishing between the sources of payments to different creditors, the fact that the post-petition loans were secured by property of the estate is dispositive in itself.

In short, all of the Debtor's post-petition payments are subject to § 549 because the source of all of the payments, including any that could be attributable to secured post-petition loan proceeds, ultimately was property of the estate.

### c. Summation

For the sake of clarity, the Court has prepared the following table summarizing which creditors must be excluded under § 547 or § 549, or which must be disregarded for other reasons set out above:

| Creditor | Exclude under § 547 | Exclude under § 549 | Exclude under Either |
|---|---|---|---|
| Armand L. Roos, Dative and Independent Executor in Succession of Houston | | | |
| Capital One/Neiman Marcus | x | | x |
| American Express | x | x | x |
| Citi Card | | x | x |
| Conn's Home Plus | x | x | x |
| Conn's Credit | x | x | x |
| First Premier | x | x | x |
| Blaze | x | x | x |
| Merrick | x | x | x |
| Discover Card | | x | x |
| Net Credit | x | x | x |
| Neiman Marcus | Disregard (same as Capital One) | | |
| Victoria's Secret | x | x | x |
| Sam's Club | Disregard (same as Conn's Credit) | | |
| Indigo | x | x | x |
| JPL Financial Services | | x | x |
| DHCC, LLC | | x | x |
| Phyllis Liberto | | x | x |
| Ken Donnelly | | x | x |
| Louisiana Neurologic Specialties | | x | x |
| Lowe's | Disregard (same as Conn's Credit) | | |
| Family Practice Associates | | x | x |
| Christus Health System | Disregard (contingent debt) | | |

| Creditor | Exclude under § 547 | Exclude under § 549 | Exclude under Either |
|---|---|---|---|
| AT&T | | x | x |
| Le Fleur Classique | | x | x |
| Henry Brown | Disregard (insider) | | |
| Rachael Williams | Disregard (insider) | | |
| Total Included for § 303(b)(2) Purposes | 10 | 2 | 1 |

Even under the Debtor's best case scenario, if the Court were to consider *only* pre-petition payments, the Petitioning Creditor has proved that fewer than 10 creditors exist whose claims are not subject to voidability under § 547. If the Court were to consider *only* post-petition transfers, the Petitioning Creditor has proved that only two creditors exist whose claims are not subject to voidability under § 549. However, § 303(b)(2) requires the Court to exclude any creditor whose claims are subject to voidability under any of the relevant statutes, which leaves only one true creditor, the Petitioning Creditor himself.

Thus, the Petitioning Creditor has proved that there are fewer than 12 creditors which should be counted for purposes of § 303(b)(2).

3.    *As of the petition date, the Debtor was not paying her debts as they came due.*

The focus now moves to § 303(h) for a determination of whether the Debtor is "generally not paying" her undisputed debts as they become due. The Petitioning Creditor has the burden of showing the Debtor is not generally paying her debts. *See In re Acis Capital Mgmt., L.P.*, 584 B.R. 115, 143 (Bankr. N.D. Tex. 2018). This determination is made as of the petition date. *Id.; see also Subway Equip Leasing Corp v. Sims (In re Sims)*, 994 F.2d 210, 222 (5th Cir. 1993).

The evidence here shows that of the 27 creditors disclosed in the List of Creditors, nine of those creditors, representing over 98% of her total outstanding debt, were not receiving any payments from the Debtor in the months leading up to the Petition Date. If a debtor is paying most of his creditors in number, but not most of his outstanding debt in amount, he is not generally paying his debts when due. *In re Smith*, 415 B.R. 222, 231 (Bankr. N.D. Tex. 2009) (debtor is not generally paying

26

debts in cases in which he is paying his small recurring debts as they come due, but is not paying 99% of his debts in aggregate amount). Also, a debtor's failure to satisfy an especially large, single, principal debt is sufficient to support a finding that a debtor is generally not paying her debts as they come due. *Aigner v. McMillan*, 2013 WL 2445042, at *4 (Bankr. N.D. Tex. June 4, 2013). Accordingly, the Court finds that, as of the petition date, the Debtor generally was not paying her debts as they came due.

*4.    Adoption by Reference*

As a final note, the Court adopts by reference the Petitioning Creditor's proposed findings of fact and conclusions of law set out in his post-trial filings (ECF # 159 and 159-1), which address the relevant law and the evidence admitted into the record.

## Conclusion

The primary purpose of the trial was to determine whether certain creditors on the Debtor's List of Creditors must be excluded because they received pre-petition transfers that are avoidable under § 547 of the Code and/or post-petition transfers that are avoidable under § 549. The evidence shows that most of the creditors must be excluded from the list under both §§ 547 and 549. Accordingly, the Debtor has fewer than 12 creditors, meaning Roos acting alone can institute the involuntary proceeding against Ms. Williams, in accordance with 11 U.S.C. § 303(b)(2). Additionally, Roos has established that he holds a noncontingent, undisputed claim exceeding $16,750, and as of the petition date, that the Debtor was not generally paying her debts as they came due. Accordingly, the Court will enter an Order of Relief under Chapter 7 of the Bankruptcy Code.

###